IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATHEW W. ROSSI,                                  No. 6: 21-CV-00153-HZ

                Plaintiff,                              OPINION & ORDER

    v.

DR. MARY E. GABRIELE, and
MEGAN QUILLAN,

                Defendants.


Bruce C. Smith
Iain Armstrong
Aryn M. Seiler (Seattle)
Lewis Brisbois Bisgaard & Smith
888 SW Fifth Ave., Suite 900
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      In early 2021, incarcerated Plaintiff Mathew W. Rossi sued Defendants Dr. Mary E.

Gabriele and Nurse Megan Quillan under 42 U.S.C. § 1983, alleging that they violated his

1 – OPINION & ORDER

Eighth Amendment rights by mistreating his serious medical condition. *See* Compl. 3–5. Now, in a motion for summary judgment, Defendants argue that they are entitled to judgment as a matter of law on all claims. Def. Mot. for Summary J. (MSJ) 14–18.

## BACKGROUND

From late-January 2020 until mid-February 2021, Plaintiff was incarcerated at Lane County Adult Corrections ("jail"). Almost immediately after being incarcerated, Plaintiff began complaining of gastrointestinal problems, such as indigestion, constipation, and chronic diarrhea. Smith Decl. Ex. D, E. Around that same time, he reported that he had been previously diagnosed with ulcerative colitis (UC) and that he had received medication for that condition at a different correctional facility. Smith Decl. Ex. G, H. He asked to be placed on that same medication.

In April 2020, Plaintiff had an appointment with Dr. Gabriele. Dr. Gabriele is a board-certified family medicine doctor, and she created a treatment plan based on Plaintiff's current symptoms. Smith Decl. Ex. H. She prescribed various medications for his constipation and related issues, requested Plaintiff's treatment records, and requested a consult with a gastrointestinal specialist. Smith Decl. Ex. H. She also warned Plaintiff to notify prison officials immediately if he noticed more serious symptoms, like bloody stools. Smith Decl. Ex. H. According to Plaintiff, Dr. Gabriele also told Plaintiff that it was "karma" if he got sick but that they "will take care of [him] as best they can." Rossi Decl. Over the next several months, Dr. Rossi reviewed Plaintiff's ongoing lab test results and kept Plaintiff informed of the steps she was taking to address his symptoms. Smith Decl. Ex. J. ("I have asked for consultation with [specialist]. . . . [w]ill keep you aware of any change in treatment plan.").

When Plaintiff complained of rectal bleeding, Dr. Gabriele ordered a CT scan—revealing that Plaintiff has mild rectal inflammation and a hypodense lesion in the pancreatic tail. Smith

Decl. Ex. N. During a consult with a specialist, Dr. Gabriele asked what further steps she should take regarding Plaintiff's ongoing treatment, and the specialist recommended, in light of the pandemic, against starting any new medications because they would weaken Plaintiff's immune system. Smith Decl. Ex. O. Around that same time, Dr. Gabriele spoke with a PA regarding Plaintiff's upcoming visit with a gastroenterology specialist; they discussed his treatment history, symptoms, and past results. Smith Decl. Ex. P. Meanwhile, Plaintiff continued to file various grievances—almost daily at some points—complaining about various gastrointestinal symptoms and the treatment he was receiving. Rossi Decl. 3–4.

In early August 2020, Plaintiff experienced severe abdominal and rectal pain and noticed blood in his stool. Smith Decl. Ex. Q. He was admitted to the local emergency room, treated, and discharged a day later. Later that month, Dr. Gabriele discussed recent lab results with Plaintiff (mostly nominal), and Plaintiff had an MRI done. Smith Decl. Ex. R, S. Plaintiff went to the ER shortly thereafter for an unrelated, possibly self-inflicted injury. Smith Decl. Ex. T. Over the next six months, Dr. Gabriele continued to monitor Plaintiff's symptoms, prescribe various treatments and medications, and schedule numerous tests. Smith Decl. Ex. T – TT. Plaintiff also met with a gastroenterological specialist. Smith Decl. Ex. V. His treatments and appointments continued until Plaintiff was transferred to the state penitentiary.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

## I.      § 1983 Deliberate Indifference

"The government has an obligation to provide appropriate medical care for the people it holds in confinement." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022); *Estelle v. Gamble*, 429 U.S. 97, 103, (1976). The Eighth Amendment's prohibition of cruel and unusual punishment includes a prohibition of prison officials "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S.

825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "To establish an Eighth Amendment

violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious

enough to constitute cruel and unusual punishment—and a subjective standard—deliberate

indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds*

*by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Deliberate indifference is a "high legal

standard" beyond malpractice or gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th

Cir. 2004). "A determination of 'deliberate indifference' involves an examination of two

elements: the seriousness of the prisoner's medical need and the nature of the defendant's

response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on*

*other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). The court does not

need to "defer to the judgment of prison doctors or administrators" when deciding if there has

been deliberate indifference. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation

omitted). The community standard of care outside of the prison context is "highly relevant in

determining what care is medically acceptable and unacceptable." *Edmo v. Corizon, Inc.*, 935

F.3d 757, 786 (9th Cir. 2019) (per curiam).

Here, even viewing the evidence in the light most favorable to Plaintiff and assuming that

he had a serious medical condition, Plaintiff cannot show that Defendants actions met the high

standard required for deliberate indifference. Specifically, Plaintiff does not present evidence

that the chosen course of treatment "was medically unacceptable under the circumstances *and*

was chosen in conscious disregard of an excessive risk to [his] health." *Toguchi v. Chung*, 391

F.3d 1051, 1058 (9th Cir. 2004) (internal quotations and citation omitted). Instead, the evidence

shows that Dr. Gabriele took a mindful, well-thought-out approach to Plaintiff's treatment. She

requested and reviewed his past records, Smith Decl. Ex. H., she prescribed appropriate

medications, Smith Decl. Ex. T – TT, she warned Plaintiff of dangerous symptoms to look out

for, Smith Decl. Ex. H., she consulted with a specialist, Smith Decl. Ex. H., she kept Plaintiff

informed of the steps she was taking throughout the process, Smith Decl. Ex. J., and she ordered

a CT scan when Plaintiff complained of new symptoms, Smith Decl. Ex. N. These actions do not

reflect conscious disregard but rather careful, ongoing attention to Plaintiff's condition and his

symptoms. Further still, after the CT scan revealed additional issues, Dr. Gabriele consulted with

a specialist about treatment options. In light of the pandemic, the specialist recommended against

starting any new medications because they would weaken Plaintiff's immune system. Smith

Decl. Ex. O. Again, where Dr. Gabriele chose a treatment plan that she believed to be in

Plaintiff's best interest and *minimized* the risk to Plaintiff, her conduct cannot constitute

deliberate indifference.[1] *See Toguchi*, 391 F.3d at 1058.

Plaintiff's strongest evidence of conscious disregard by any Defendant is his assertion

that Dr. Gabriele told him it was "karma" if he got sick. But Plaintiff also states that Dr. Gabriele

continued to say that the medical team "will take care of [him] as best they can." Rossi Decl.

Such a statement shows the opposite of conscious disregard of an excessive risk to Plaintiff's

health; it shows that Dr. Gabriele was intent on providing Plaintiff treatment she believed to be

most beneficial for his condition. Although the Court is sympathetic to the distress and suffering

caused by Plaintiff's ongoing symptoms, the Court finds that the Defendants provided attentive

and ongoing care and did not act with deliberate indifference.

---

[1] Plaintiff asserts that Defendant "Quillan was at all times aware of the events described herein and had a duty to report Dr. Gabriele's mistreatment of Plaintiff. Ms. Quillan's failure to report shows deliberate indifference to Plaintiff's serious medical issue." As this appears to be the sole basis Plaintiff asserts for Defendant Quillan's liability, the Court discusses only the actions of Dr. Gabriele. Because the Court concludes Dr. Gabriele did not act with deliberate indifference, the Court concludes that Defendant Quillan's actions were correspondingly appropriate.

**II.    Oregon Law Claim for Medical Negligence**

Under Oregon law, "as a general rule, a plaintiff in a medical malpractice case must offer expert testimony that, to a reasonable medical probability, the alleged breach of the standard of care caused the plaintiff's injuries." *Chouinard v. Health Ventures*, 179 Or. App. 507, 512, 39 P.3d 951, 953 (2002). Although "not every medical case requires expert testimony to establish either the standard of care or causation," those cases which do not involve situations plainly within the understanding of a lay person—such as "leaving a clamp behind the patient's heart." *Id.*

Here, Plaintiff argues that expert testimony is not necessary because "It does not take an expert to understand that bloody stools are painful and that any amount of pain relief would ease Plaintiffs physical and mental suffering." Pl. Am. Resp. 13–14. Although true, Oregon law focuses on whether a lay person would understand that the level of care provided was plainly insufficient—not whether a lay person would understand the harm caused. *See id.* Here, the alleged negligent actions Plaintiff complains are complex and he asserts that Defendant should have chosen different courses of treatments and proscribed different medications. An expert would be required to help the jury understand whether the care deviated from common medical practices; this is not a situation akin to leaving a clamp behind someone's heart. *See id.* Thus, because Plaintiff has stated that he has not retained or sought out an expert, his claim fails under Oregon law. Rossi Dep. 19, lines 12–17.

2a8afa0414635606

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF 24) is

GRANTED. Pending motions are DENIED as moot.

IT IS SO ORDERED.


DATED:_____October 13, 2022\_\_\_\_.


_____
MARCO A. HERNÁNDEZ
United States District Judge


8 – OPINION & ORDER